## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARK CHAVEZ,**

     **Plaintiff,**

**vs.**                                               **No. 13 CV 1047 JAP/SCY**

**ANDREW CHAVEZ, FLOYD ARCHULETA,**
**PAUL LUJAN, and RALPH MEDINA, in their**
**individual capacities, and THE ESPANOLA**
**SCHOOL BOARD OF EDUCATION,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S CORRECTED MOTION
## FOR ATTORNEYS' FEES AND COSTS

After settling his claims under 42 U.S.C. § 1983 and the New Mexico Whistleblower

Protection Act (WPA), NMSA 1978 §10-16C-1 *et seq*., Plaintiff requests an award of attorneys'

fees and costs under 42 U.S.C. § 1988. *See* PLAINTIFF'S CORRECTED MOTION FOR

ATTORNEYS' FEES AND COSTS AND MEMORANDUM IN SUPPORT (Doc. No. 105)

(Motion). Plaintiff's counsel request compensation at the following rates: $425.00 for Messrs.

Richard Rosenstock and Daniel Yohalem and $225.00 for Ms. Katherine Murray. In total,

Plaintiff requests $260,341.60 in attorney's fees for the case plus $ 20,268.75 in attorney's fees

for litigating the Motion; gross receipts tax of $22,974.98 (280,610.35 x .081875 GRT rate); and

costs in the amount of $9,102.06 for a total award of $312,687.39. Defendant Espanola School

1

Board of Education (Defendant or Board) opposes the amount requested in the Motion.[1] *See* DEFENDANT'S RESPONSE TO PLAINTIFF'S CORRECTED MOTION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM IN SUPPORT (Doc. No. 110) (Response). Plaintiff filed PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO CORRECTED MOTION FOR ATTORNEYS' FEES AND COSTS (Doc. No. 113) (Reply). The Court will grant the Motion but will reduce the attorneys' requested hourly rates, and the Court will not award fees for certain unnecessary hourly work performed by Plaintiff's attorneys.

I.      BACKGROUND

Plaintiff brought this case under 42 U.S.C. § 1983 and later amended his Complaint to add a claim under the WPA alleging the Defendants harassed and retaliated against him while he was the Facilities Manager for the Espanola School District in Espanola, New Mexico (the District). In his FIRST AMENDED COMPLAINT FOR DAMAGES (Doc. No. 59), Plaintiff alleged that during his employment with the District, Defendants Chavez, Archuleta, Lujan, and Medina (together Defendant Board Members) ran the District as a political patronage operation and tried to force Plaintiff to award jobs and contracts to their political supporters and to deny the same to their political opponents. Plaintiff refused to go along with the scheme and reported the unlawful conduct to his supervisor, School Superintendent Arthur Blea, and to the New Mexico School Facilities Agency. Plaintiff alleged that Defendant Board Members "subjected Plaintiff to a campaign of harassment, humiliation, and threats calculated to make his working conditions so intolerable that he would resign." (First Am. Compl. ¶ 3.) During the two years of

---

[1] The parties agreed to dismiss the claims against Defendants Andrew Chavez, Floyd Archuleta, Paul Lujan, and Ralph Medina, who were members of the Board at the time of the events relevant to this case. *See* JOINT STIPULATION TO DISMISS PLAINTIFF MARK CHAVEZ'S CLAIMS WITH PREJUDICE (Doc. No. 106) and ORDER DISMISSING PLAINTIFF MARK CHAVEZ'S CLAIMS WITH PREJUDICE (Doc. No. 107).

his employment, Plaintiff sought medical and psychological treatment, and eventually, Plaintiff resigned his position. (*Id.*)

On November 17, 2014, after nearly a year of discovery, ten depositions, a motion to compel and other discovery motions, and a day-long mediation with United States Magistrate Judge Steven C. Yarbrough, the case settled. The settlement agreement provided that Defendants would pay Plaintiff one year's salary, $65,000, plus attorney's fees and costs, which would be decided by the Court in a final, non-appealable decision. (*See generally* Mot. Ex. 1 Affidavit of Richard Rosenstock, Ex. 2 Affidavit of Daniel Yohalem, and Ex. 3 Affidavit of Katherine Murray.)

## II.     STANDARD OF REVIEW

The Civil Rights Attorneys' Fees Act provides:

> (b) Attorney's fees. In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983 . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]

42 U.S.C. § 1988.

The New Mexico Whistleblower Protection Act states,

> A public employer that violates the provisions of the Whistleblower Protection Act shall be liable to the public employee for actual damages, reinstatement with the same seniority status that the employee would have had but for the violation, two times the amount of back pay with interest on the back pay and compensation for any special damage sustained as a result of the violation. In addition, an employer shall be required to pay the litigation costs and reasonable attorney fees of the employee.

NMSA 1978 § 10-16C-4(A).

In a fee request under § 1988(b), a claimant must prove two elements: (1) that the claimant was the "prevailing party" in the proceeding; and (2) that the claimant's fee

request is "reasonable." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Plaintiff is the prevailing party through settlement and is entitled to his reasonable attorney's fees and costs, as determined by the Court. *See Chicano Police Officer's Assoc. v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980) ("If a settlement provides some benefit to plaintiffs or a vindication of their rights, then the congressional intent to encourage private enforcement of rights . . . will be furthered by the awarding of fees . . . as long as plaintiffs have received substantial benefits.").

Any determination of reasonable attorney's fees starts with the calculation of the "lodestar" amount, and a claimant is entitled to the presumption that this lodestar amount reflects a "reasonable" fee. *Robinson*, 160 F.3d at 1281. The same standard applies under New Mexico statutes, like the WPA, which contain fee shifting provisions. *See Rio Grande Sun v. Jemez Mountains Public School Dist.*, 2012 -NMCA- 091 ¶20, 287 P.3d 318 (2012) ("In statutory fee-shifting cases like this one, the lodestar method for determining attorney fees is generally used "because it provides adequate fees to attorneys who undertake litigation that is socially beneficial, irrespective of the pecuniary value to the [claimant].").

The lodestar amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Robinson*, 160 F.3d at 1281. A reasonable rate is defined as the prevailing market rate in the community in question for an attorney of similar experience. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In support of the lodestar, the claimant should submit evidence supporting the hours worked and rates claimed. *Hensley*, 461 U.S. at 433. Where the documentation of hours is inadequate,

4

the district court may reduce the award accordingly. *Id.* The district court also should exclude from its fee calculation hours that were not "reasonably expended." *Id.* at 434. Thus, the Court must consider whether the attorney's hours were "necessary" under the circumstances. *Robinson*, 160 F.3d at 1281.

Cases may be overstaffed, and the skill and experience of lawyers vary widely. Hence, counsel should make a good faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. *Hensley*, 461 U.S. at 434. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis in original)).

In determining a reasonable fee award, a court should consider certain factors: (1) whether the tasks being billed "would normally be billed to a paying client," (2) the number of hours spent on each task, (3) "the complexity of the case," (4) "the number of reasonable strategies pursued," (5) "the responses necessitated by the maneuvering of the other side," and (6) "potential duplication of services" by multiple lawyers. *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983). A court should subtract hours if the attorney fails to keep "meticulous, contemporaneous time records" that reveal "all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* at 553.

> As Congress noted when it enacted the fee-shifting provision in section 1988(b), the purpose behind this measure was not to give private lawyers an unwarranted windfall, but rather to ensure compensation "adequate to attract competent counsel." *See* S. Rep. No. 94–1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913, *quoted in Homeward Bound, Inc. v. Hissom Mem'l Ctr.,* 963 F.2d 1352, 1355 (10th Cir. 1992). It goes without saying that if a court's compensation is not adequate to match what the market will bear for a lawyer's services, then competent lawyers will go elsewhere to offer their services. Such a result would do irreparable damage to our system of private enforcement of federal civil rights.

*Robinson*, 160 F.3d at 1281.

III.   DISCUSSION

A. Plaintiff's Request

In their affidavits, Plaintiff's attorneys outline their education and experience litigating civil rights cases. The attorneys' time records are attached to their affidavits. In the records, each attorney itemizes the time spent and the expenses incurred. Plaintiff's attorneys describe their pre-filing investigation of Plaintiff's claims, their preparation and filing of the Complaint and the First Amended Complaint, their pursuit of discovery and their disputes over discoverable information, and finally, their mediation session yielding the settlement of this case. (Mot. Exs. 1, 2, and 3.) Mr. Rosenstock requests compensation for 431.0 hours of work, Mr. Yohalem requests compensation for 194.60 hours of work, and Ms. Murray requests compensation for 76.0 hours of work. The additional hours requested for litigating the Motion will be discussed below.

The attorneys assert that they excluded from this request any hours spent in duplicative or unnecessary work. For example, if all three attorneys appeared at a deposition, only two of those attorneys requested fees for their appearance. (Murray Aff. ¶26.) In addition, the attorneys reduced their requested hours by 8% across the board to

account for "inadvertent duplication or billing error[s]." (Mot. at 8.) "The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services." *Ramos,* 713 F.2d at 554.

Plaintiff asserts that his attorneys charged the appropriate number of hours and that the amount of fees requested reflects work that was efficiently and effectively performed without duplication or waste. Plaintiff contends that his counsel appropriately handled complex and challenging issues that required the expertise of experienced attorneys.

### 1. Complexities of the Case

After meeting with Plaintiff and prior to filing the Complaint, the attorneys initially investigated the fact that Plaintiff was not fired, but resigned his employment. To prove his claim of unlawful treatment, Plaintiff had to show he was constructively discharged. In other words, Plaintiff had to prove that Defendant Board Members harassed him so severely that he was forced to resign. That claim was further complicated by the fact that Defendant Board Members did not have direct power over Plaintiff's employment. Plaintiff had to show that Defendant Board Members wielded hidden power over employment decisions within the District. To that end, Plaintiff had to prove that, even though the Defendant Board Members did not have the express power to fire him, they had used their power in the past to usurp the hiring, firing, and promotion power given to the District Superintendent by state law. Consequently, Plaintiff faced the burden of convincing the Court and the jury that the Board members had *de facto* control over his employment at the District. Finally, Plaintiff had to uncover evidence to prove that the Defendant Board Members carried out a political patronage system and that they

attempted to pressure Plaintiff into awarding contracts to their political allies. Certain

documents containing evidence of the patronage system were difficult to obtain. Plaintiff

had to pursue a motion to compel production of documents, and Plaintiff eventually had

to depose the District's procurement officer. Plaintiff submits that the credibility of his

allegations were crucial to the resolution of the case and his counsel proved Plaintiff's

credibility by obtaining corroborating witness testimony as well as obtaining documents

from contractors who were favored by the District. As a rule, two of Plaintiff's attorneys

appeared at all depositions, one to question the deponent, and one to observe, assist, and

assess credibility. (Murray Aff. ¶ 26.)

B. Defendant's Opposing Arguments

In its Response, Defendant contends that the requested amount of fees is

unreasonable with respect to both the hourly rates and the hours expended. Defendant

contends Plaintiff has failed to prove that the customary hourly rate of attorneys with

similar experience in the Santa Fe/Rio Arriba counties is $425.00 per hour for Mr.

Rosenstock and Mr. Yohalem. In addition, Defendant contends that attorneys with

comparable experience to Ms. Murray's are not charging clients $225.00 per hour.

Defendant maintains that the appropriate market rate must be determined at the time a

client retains counsel, not when the work is performed. *See Kelley v. City of Albuquerque*,

No. 03 CV 507 JB/ACT, 2005 WL 3663515, *9 (D.N.M. Oct. 24, 2005) ("the market rate

should be assessed "at the time the fee is being established . . . rather than those in effect

at the time the services were performed.") (unpublished) (quoting *Nieto v. Kapoor,* No.

96 CV 1225 MV/JHG, MEMORANDUM OPINION AND ORDER at 25-26 (D.N.M.

June 12, 2001) (unpublished)). Since the entire case lasted less than a year, the Court will consider 2013 as the appropriate time frame for billing rates.

Also, according to Defendant, Plaintiff is seeking payment for excessive and redundant work performed by three attorneys to deal with one set of "simple facts" pertaining to one "straightforward legal issue." Defendant maintains that Mr. Rosenstock and Mr. Yohalem improperly "block-billed" their time, which prevents the Court from determining whether the hours spent on particular tasks are reasonable.[2]

After excluding hours it deems unreasonable, Defendant submits that the lodestar should be as follows: (1) Mr. Rosenstock should be compensated at $350.00 per hour for 225 hours, (2) Mr. Yohalem should be compensated at $350.00 per hour for 225 hours, and (3) Ms. Murray should be compensated at $150.00 per hour for 55.9 hours of time.[3]

Noting that Plaintiff received one-fourth of the amount he originally requested in settlement, Defendant asks the Court to further reduce the fee award to reflect the degree of success obtained. *See Obenauf v. Frontier Financial Group, Inc.*, 785 F. Supp. 2d 1188, 1220 (D.N.M. 2011) (awarding a reduced fee from the lodestar amount due to the limited success achieved in an FDCPA case and noting that the court awarded the plaintiff "less than one-fortieth of the reward he sought.") (Browning, J.) Defendant also asserts that the costs submitted by Plaintiff's counsel should be reduced. *See* Affidavit of Elizabeth German (German Aff.) (Resp. Ex. 2 ¶ 34.)

---

[2] Plaintiff's counsel did not engage in block billing as that concept is understood in the case law. "The term 'block billing' refers to 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Robinson*, 160 F.3d at 1285 n.9 (quoting *Harolds v. Dillards Dept. Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir.), *cert. denied* 519 U.S. 928 (1996)).
[3] Defendant proposed an award of 450 hours for both Mr. Rosenstock and Mr. Yohalem at $350.00 per hour. The Court simply divided 450 hours by 2 to attribute 225 hours to each attorney. Defendant does not dispute the 8.1875% gross receipts tax rate added to the attorney's fees award.

C.      Hourly Rates

      1. Messrs. Rosenstock and Yohalem

Mr. Rosenstock and Mr. Yohalem each request an hourly rate of $425.00. The United States Supreme Court defines a reasonable hourly rate as "one that is adequate to attract competent counsel, but does not produce a windfall to attorneys." *Blum*, 465 U.S. at 893–94. It is Plaintiff's burden to prove this is a reasonable hourly rate charged by attorneys with similar experience during the time period this lawsuit was pending: October 2013 to November 2014. In support of this request, Messrs. Rosenstock and Yohalem submit the affidavits of Philip B. Davis (Mot. Ex. 4), Paul Bardacke (Mot. Ex. 5), and Robert Rothstein (Mot. Ex. 6), who are attorneys familiar with hourly rates charged by attorneys in this region.[4]

Mr. Davis, a civil rights litigator who has 34 years of experience, testified that he charged an hourly rate of $375.00 in 2014, but increased the rate on January 1, 2015 to $400.00 per hour. (Resp. Ex. 4 at ¶ 18.) At a 2013 hearing on a motion to remand, Mr. Davis was awarded his hourly rate of $375.00 by United States District Judge James O. Browning. (*See Knight v. Metzgar,* No. 12 CV 460, CLERK'S MINUTES (Doc. No. 46) (June 18, 2013)).

Mr. Bardacke is a New Mexico attorney with over 40 years' experience in litigation, and he is familiar with rates charged by New Mexico practitioners. (Mot. Ex. 5 ¶¶ 5–6.) In his affidavit, originally submitted in this Court in 2010 in *Mackey v. Staples,*

---

[4] Plaintiff also attaches to the Reply the affidavits of Joseph Goldberg, Bradford C. Berge, and Carolyn M. Nichols, attorneys with experience in complex civil litigation. They testified about their hourly rates and about regional hourly rates charged by other attorneys with similar experience. (Reply Exs. 4, 5, and 6.) Mr. Goldberg, who has practiced in the area of complex civil litigation for over 26 years, testified he charges his clients $425.00 per hour. His firm bills clients $250.00 per hour for associate attorneys' time. (Goldberg Aff. ¶¶ 2, 5, & 7.) Mr. Berge, who has practiced in the area of complex civil litigation for over 35 years, testified he charges his clients $425.00 per hour. (Berge Aff. ¶¶ 1, 2, & 4.) Ms. Nichols, a civil rights attorney with over 21 years' litigation experience, testified she charges $375.00 per hour, and her firm values senior associates' time at $275.00 per hour. (Nichols Aff. ¶¶ 1-5.)

*Inc.* No. 09 CV 0023 JCH/WPL, Mr. Bardacke testified that $425.00 per hour was reasonable and customary compared to fees charged in New Mexico by attorneys with similar experience and skill in federal civil rights litigation. (*Id.* ¶ 12.)[5]

Mr. Rothstein, a civil rights attorney who had practiced for 34 years at the time of his affidavit, testified in 2010 in the *Mackey* case that his hourly rate at that time was $350.00. (Resp. Ex. 6 ¶¶ 5–6.)[6] As an attorney familiar with the prevailing hourly rates for attorneys in this area, Mr. Rothstein opined that an hourly rate as high as $450.00 would be reasonable for Rosenstock, who is one of the "finest litigators in the country with a well-deserved reputation for excellence in civil rights cases." (*Id.* ¶ 13.) Mr. Rothstein testified that he was familiar with Yohalem's abilities in "litigating complex constitutional, civil rights, tax and federal statutory claims at every level of federal and New Mexico courts." (*Id.* ¶ 17.) Based on his high regard for both Mr. Rosenstock and Mr. Yohalem, Mr. Rothstein opined in 2010 that the $425.00 per hour rate requested by them was reasonable. (*Id.*)

In the *Mackey* case United States District Judge Judith C. Herrera properly assessed the experience and abilities of Mr. Rosenstock and Mr. Yohalem:

> Certainly, both [Rosenstock and Yohalem] are very experienced attorneys who have achieved significant success as civil rights litigators in New Mexico. Both Mr. Rosenstock and Mr. Yohalem have practiced civil rights litigation for 37 years, and are among the most respected practitioners in their field in this district. . . . The Court finds that both of Plaintiff's attorneys should be compensated at the upper end of the fee scale for New Mexico attorneys, based on their years of experience, the quality of work in this case, and the outcome they achieved for their client.

*Mackey v. Staples, Inc.*, No. 09 CV 0023 JCH/WPL, ORDER GRANTING ATTORNEYS' FEES AND COSTS (Doc. No. 119) at pp. 4–5  (Mar. 4, 2011). However,

---

[5] *See* No. 09 CV 0023 (Doc. No. 114-1).
[6] *See* No. 09 CV 0023 (Doc. No. 107-4).

Judge Herrera awarded Mr. Rosenstock and Mr. Yohalem a rate of $350.00 per hour because the rate was "more in keeping with the amounts awarded by other courts in this district for similarly qualified and successful attorneys." *Id.* at p. 5 (citations omitted).

Based on Mr. Davis' testimony that his rate during the relevant time period of this lawsuit was $375.00 per hour and based on the recent rulings in the District of New Mexico for attorneys with similar experience, the Court finds that an hourly rate of $375.00 is reasonable and appropriate for Mr. Rosenstock and Mr. Yohalem in this case.

### 2. Ms. Murray

Ms. Murray began practicing law in New Mexico in April 2010. (Resp. Ex. 3 ¶ 3.) Ms. Murray is a sole practitioner, representing plaintiffs in First Amendment, civil rights, employment discrimination, and whistle blower lawsuits. (*Id.* at ¶ 4.) In late 2013, Mr. Yohalem contracted with Ms. Murray as co-counsel and asked her to review documents provided by Plaintiff, create a time line of events, conduct legal research concerning possible claims, and provide an assessment of the claims. (*Id.* at ¶ 6.) After this case was filed, Ms. Murray assisted in discovery, including a contested motion to compel documents, and she participated in several depositions, particularly the deposition of the District's procurement officer in which the officer identified the location of critical documents. (Resp. at ¶ 14.)

In his affidavit, Mr. Davis testified that he recently hired Ms. Murray as co-counsel and billed his client $225.00 per hour for Ms. Murray's time because her skill and abilities exceeded other lawyers with similar experience. (Davis Aff. ¶ 17.) Defendant proffers Ms. German's testimony that she would bill her public entity clients

between $90.00 and $150.00 per hour for an attorney with the same experience as Ms. Murray. (German Aff. ¶ 21.)

Neither $225.00 per hour nor $150.00 per hour is a reasonable rate for an attorney with Ms. Murray's experience. In contrast, in November 2014 Judge Herrera awarded co-counsel Tara Ford, an attorney with 20 years' experience in the same type of litigation, an hourly rate of $195.00. *See Morrison v. Los Lunas Public Schools*, No. 12 CV 143 JCH/RHS, MEMORANDUM OPINION AND ORDER (Doc. No. 60) (Nov. 24, 2014). And in March 2014, Judge Herrera awarded an attorney with one and one-half years' experience an hourly rate of $160.00. *Jaramillo v. Hickson*, No. 09 CV 634 JCH/WDS MEMORANDUM OPINION AND ORDER (Doc. No. 441) (Mar. 27, 2014).

Based on the evidence presented and recent rulings in this district, the Court concludes that an appropriate hourly rate for Ms. Murray is $175.00.

D. Reasonable Hours Expended

1. Mr. Rosenstock

Mr. Rosenstock requests compensation for 396.52 hours of work. He arrived at this number by imposing an 8% across the board reduction to his total request of 431 hours. This reduction accounted for any inadvertent duplication or unnecessary work. He described the time he spent interviewing Plaintiff and other witnesses, researching legal issues, drafting the Complaint and the First Amended Complaint, drafting requests for discovery, litigating a contentious motion to compel, preparing for and attending several depositions, reviewing voluminous documents, and participating in the settlement mediation.

Defendant responds that Mr. Rosenstock's billing records are too vague for the Court to determine how certain hours were allotted to specific tasks. Defendant also contends that many of the entries of work by Mr. Rosenstock reflect duplicative work and should be excluded from the fee award.

Ms. German illustrates in a chart the hours expended by each attorney she considered duplicative or excessive. (*See* German Aff. Resp. Ex. B-1.) For example, on March 6, 2013, all three of Plaintiff's attorneys billed for a meeting with Plaintiff, but the entries varied from 1.25 hours to 3 hours. In the chart, Ms. German reduced each attorney's time entry to 1.25 hours. However, Ms. German fails to explain how she arrived at this figure.

On October 22, 2014, Mr. Rosenstock billed 4.5 hours for assisting in the deposition of Plaintiff, but Mr. Yohalem and Ms. Murray both billed 7 hours for attending that deposition. Ms. German contends that Mr. Rosenstock's partial attendance at that deposition should not be included in the fee award. However, in his supplemental affidavit, Mr. Rosenstock states he did not request compensation for those 4.5 hours. (Reply Ex. 1 ¶¶ 26, 32.)

Ms. German testified that Mr. Rosenstock and Mr. Yohalem billed a total of 35.5 hours for drafting and revising the Complaint but that attorneys with this level of experience "should have been able to draft a cogent Complaint [in] less than half the time billed." (*Id.* ¶ 37.) Without more, the Court will not arbitrarily divide these hours in half. Ms. German submits the number of hours Mr. Rosenstock and Mr. Yohalem spent in preparing for depositions was also unreasonable and that in her experience, deposition preparation should not take more than "2 to 2 1/2 times the number of hours anticipated

14

for the deposition." (*Id.* ¶ 38.) Nevertheless, the Court will not arbitrarily exclude hours for deposition preparation that Ms. German claims are excessive under her rule of thumb.

In addition, Ms. German testified that Plaintiff's counsel filed an unsuccessful eight-page response to Defendant's seven-page motion to require Plaintiff submit to additional physical and mental examinations under Fed. R. Civ. P. 35. Ms. German contends that since the Court granted the motion, no fees should be awarded for that effort. (*Id.* ¶ 40.) However, "it is inappropriate to proportionately reduce the fee for every lost motion where the party prevails overall on the main issue in the case."*Gurule v. Wilson*, 649 F.2d 754 (10th Cir. 1981). Mr. Yohalem will be compensated for the time he spent doing legal research and drafting Plaintiff's response to the motion for independent medical examinations.

In an affidavit, Ms. Karen Kilgore, Defendant's counsel, submitted that Plaintiff's motion to extend the deadlines of the Scheduling Order and a motion for leave to amend the Complaint were unnecessary. (*See* Kilgore Aff. Resp. Ex. A.) Ms. Kilgore notes that in the Scheduling Order (Doc. No. 17) the Court set May 30, 2014 as the deadline for filing amended pleadings. One of Plaintiff's attorneys contacted Ms. Kilgore in late June 2014 to discuss filing an Amended Complaint to add a claim under the WPA. (Kilgore Aff. ¶ 27c.) Ms. Kilgore indicated that although it was past the deadline, she would not oppose a motion to extend the deadline, yet Plaintiff filed an eight page motion and memorandum that "should have and could have been one page." (*Id.*) Ms. Kilgore also takes issue with Plaintiff's six-page unopposed motion seeking leave of the Court to amend the Complaint. (*Id.*) Significantly, no factual information was added in the First Amended Complaint; only a claim under the WPA was added. Ms. Kilgore testifies that

Plaintiff's attorneys billed for 7.0 unnecessary hours of work on these two unopposed motions. (*Id.*)

The Court finds that not only were the motion to extend the deadline and the motion for leave to amend unnecessary, the First Amended Complaint itself was unnecessary. First, if counsel had amended the Complaint prior to May 30, 2014, neither motion would have been necessary. Beyond that, it is reasonable to presume that a claim under the WPA was obvious prior to the filing of the Complaint because the Complaint itself alleges that Plaintiff reported to Mr. Blea about being pressured by Defendant Board Members to hire their political allies. (Compl. ¶¶ 40, 47, and 63.) Hence, the factual elements of a WPA claim were apparent from the beginning.[7] *See generally Randall v. State of New Mexico,* No. 13 CV 398 CG/LAM, ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Doc. No. 57) at pp. 10–16 (discussing the WPA and its legislative history). In addition, Plaintiff's attorneys do not explain why the WPA claim was not apparent at the time the Complaint

---

[7] The WPA prohibits a public employer from taking retaliatory action against a public employee who "communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act." NMSA 1978 § 10-16C-3(A) (2010).

16

was filed, but became apparent in June and July of 2014.[8]

Ms. Kilgore opines that between October 5, 2014 and October 15, 2014, Mr. Rosenstock "apparently spent 62.5 hours preparing for the deposition of two individual Defendants, but the depositions of these Defendants lasted only 14 hours total." (*Id.* ¶ 8e.) Ms. Kilgore contends that based on the amount of time Mr. Rosenstock spent preparing for other depositions, he should have expended half of the time preparing for those two depositions. (*Id.*) In his supplemental affidavit attached to the Reply, Mr. Rosenstock explains that in October 2014 he spent 62.5 hours preparing for the depositions of Defendants Lujan and Chavez because just prior to those depositions, Plaintiff received over 4,000 pages of documents from Defendants and a contractor for the District. This production contained copies of many emails between the contractor and Defendants that Plaintiff sought in his initial request for production. Mr. Rosenstock points out that if Defendant had timely produced the documents, he would have billed the time reviewing them in the Spring of 2014, and he would have billed the hours as part of earlier document reviews. (*See* Reply Ex. 1 ¶¶ 17–21.) Because he got the documents just before

---

[8] In their affidavits, all three of Plaintiff's attorneys testified to the same information. They described the difficulties in obtaining documents requested in discovery. They recounted a contentious motion to compel Defendants to turn over documents related to the award of numerous public contracts. Plaintiff finally received those documents approximately one year after the case was filed. (Rosenstock Aff. ¶¶ 18–19; Yohalem Aff. ¶¶ 18–19; Murray Aff. 14–15.) They then described having to depose several witnesses "without many necessary documents in order to comply with the Scheduling Order." (Rosenstock Aff. ¶ 19; Yohalem Aff. ¶ 19; Murray Aff. ¶ 15.) They described deposing three persons employed with companies that had contracted with the District who corroborated key claims about the "selection of incompetent contractors and inappropriate changes in procedures." (*Id.*) The attorneys then testified:

> At this point we concluded that there was substantial evidence that [Plaintiff] had not only refused to go along with defendants' efforts to obtain contracts of their political supporters, but had repeatedly reported this inappropriate conduct to the New Mexico Public Schools Facilities Authority, Superintendent Blea, and to the Board members themselves. Consequently, we decided to add a New Mexico Whistleblower Protection Act claim to the case.

(Rosenstock Aff. ¶ 20; Yohalem Aff. ¶ 20; Murray Aff. ¶ 16.) Presumably, the depositions of witnesses who corroborated Plaintiff's claims occurred sometime before the First Amended Complaint was filed. But, it is not apparent from the attorneys' testimony what new information, previously unavailable when the Complaint was filed, actually led to the decision to add a WPA claim.

crucial depositions, Mr. Rosenstock chose to bill the extra time as deposition preparation instead of document review.

After considering the duplicative and unnecessary entries in Mr. Rosenstock's billing records, the Court finds that he reasonably spent 395.27 hours representing Plaintiff in this case. To determine this total, the Court started with Mr. Rosenstock's total requested hours, 431.0. Then the Court subtracted the 8% Plaintiff subtracted for inadvertent duplication which resulted in 396.52 hours. Then the Court subtracted .75 hours of unnecessary time spent reviewing the motion to extend the scheduling order deadlines and .5 of an hour of unnecessary time spent reviewing the First Amended Complaint for a total of 395.27 hours of compensable time.

2. Mr. Yohalem

Ms. German submits that the Court should exclude time Mr. Yohalem spent preparing a subpoena of Defendant's expert psychologist, Dr. Samuel Roll, seeking copies of his reports prepared as an expert in unrelated cases. (German Aff. ¶ 41.) Ms. German maintains that Mr. Yohalem should have known the subpoena was improper because such reports would contain confidential information about people unrelated to this lawsuit. (*Id.*) Defendant's counsel filed a motion to quash the subpoena. In response, Mr. Yohalem filed a notice of withdrawal of the subpoena, yet on the following day, Mr. Yohalem filed an unnecessary response to the motion to quash. The subpoena, the notice of withdrawal, and the response to the motion to quash were unnecessary and unreasonable. Hence, the Court will subtract .6 hours from Mr. Yohalem's fee award for the time spent on those matters.

18

Ms. German's chart shows that Mr. Yohalem billed 3 hours for a meeting with Plaintiff on March 6, 2013, while co-counsel, Mr. Rosenstock billed 1.25 hours and Ms. Murray billed 2.5 hours for this meeting. Mr. Yohalem explained that the extra time was spent "review[ing] documents and meet[ing] with co-counsel re causes of action and proof." (Ex. 2B.)

Mr. Yohalem recorded a total of 12.8 he spent hours reviewing the Complaint. Ms. German testified that this should be halved given the expertise of both Mr. Yohalem and Mr. Rosenstock. However, other than presenting Ms. German's general opinion that complaint drafting should not take that long, Defendant does not substantiate this assertion.

Since the Court agrees that Plaintiff's attorneys should have met the deadlines in the Scheduling Order and should have included the WPA claim in the original Complaint, the Court will subtract the 7.3 hours Mr. Yohalem spent preparing the First Amended Complaint and 5.1 hours to prepare the motion to extend the scheduling order deadlines and the motion to amend the Complaint. Those hours were unnecessary and will be subtracted from the total time for which Mr. Yohalem will be compensated.

To determine the total of compensable work by Mr. Yohalem, the Court starts with Mr. Yohalem's requested hours, 195.60. Then the Court will subtract the 8% across the board reduction for inadvertent duplication for a total of 179.03 hours. The Court will subtract 7.3 and 5.1 hours spent on the First Amended Complaint, the motion to extend deadlines, and motion to amend the Complaint for a total of 166.63 hours of compensable time.

3. Ms. Murray

The only reduction of Ms. Murray's requested hours will be the .5 hours Ms. Murray spent reviewing the First Amended Complaint. Therefore, the Court will award compensation to Ms. Murray for 76 total requested hours minus the 8% across the board reduction for a total of 69.92 hours. Then the Court will subtract .5 hours Ms. Murray spent reviewing the First Amended Complaint for a total of 69.42 compensable hours.

E. Adjustments to Attorney's Fees

A reasonable attorney's fee starts, but does not end, with the lodestar amount. Defendant asks the Courts to adjust the total fee award downward to reflect the limited damages awarded to Plaintiff in the settlement. Defendant asserts that the ultimate settlement of $65,000 is about one-fourth of the Plaintiff's original $250,000 offer.

As the Supreme Court recognized, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434. "That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the results achieved." *Id.* at 436. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison with the scope of the litigation as a whole." *Id.* at 440.

The Court disagrees that this case yielded limited success for Plaintiff. Plaintiff was vindicated on both of his claims and received one year's salary as compensatory damages. Beyond that vindication, this case led to political changes in the Espanola Valley.[9] *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Because damages

---

[9] The *Rio Grande Sun* ran a three-part series using the depositions taken and documents produced in this case to provide the public with an in-depth look at Defendant Board Members' misuse of public contracts as a political spoils system. On February 4, 2015, Defendants Chavez and Medina were defeated in their bid for re-election while Defendant Lujan kept his seat by a very narrow margin. (Reply Ex. 1 Rosenstock Supp. Aff. ¶¶ 4-5.)

awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."). Hence, Plaintiff is entitled to an award of reasonable attorneys' fees without a further downward adjustment.

F. Reasonable Costs

The Court finds that most of the entries for costs are sufficiently supported. However, Ms. German points out that a $61.10 charge for medical records by Mr. Rosenstock does not indicate who was paid for these records or whose records they were. (German Aff. ¶ 34A; Mot. Ex. 1B.) Mr. Rosenstock explains that this charge must have been for Plaintiff's medical records, since he was the only person whose records would be relevant. (Rosenstock Supp. Aff. ¶ 29.) This explanation is insufficient, and that charge will be excluded.

Ms. German identifies five charges by Mr. Rosenstock for deposition fees that are higher than the statutorily required witness fee of $40.00 per day for appearances in federal court. 28 U.S.C. § 1821(b).[10] The Court will deduct all amounts over the $40.00 daily witness fee. Ms. German questions Mr. Rosenstock's $16.00 charge for postage because it does not indicate what type of material was mailed or to whom it was sent. Mr. Rosenstock rightly points out that courts do not require such detail in describing mailing costs; thus, this cost will be included in the reimbursement award. (Rosenstock Supp. Aff. ¶ 29.) Mr. Rosenstock entered a $60.00 charge for a trip to Albuquerque for a status

---

[10] The charges for deposition witness fees totaling $415.00 are broken down as follows:
1. Jose Archuleta deposition witness fee:   $100.00
2. Gilbert Rivero deposition witness fee:   $100.00
3. Sanjay Engineer deposition witness fee: $ 70.00
4. Clay Simmons deposition witness fee:   $ 70.00
5. Arthur Blea deposition witness fee:      $ 75.00

conference. To arrive at that amount, Mr. Rosenstock charged the reimbursement rate of $.50 per mile times 130 miles for the round trip. Mr. Rosenstock should have charged $65.00 for the trip of 130 miles, so the Court will add $5.00 to the requested amount and will award $65.00 for this trip.

Mr. Yohalem's request for cost reimbursement of $50.00 for "expert services" fails to explain the expert's identity or the nature of the services. Mr. Yohalem explains that the $50.00 charge must have been for the Plaintiff's expert, but this explanation is inadequate. (Yohalem Supp. Aff. ¶ 6.a.) A May 7, 2014 entry for $170.00 is labeled as "deposition subpoenas" but it does not say to whom the subpoenas were issued. These two cost entries will be excluded from the award of costs.

The Court finds that a total of $496.10 should be subtracted from and $5.00 should be added to the total costs requested. Hence the Court will award a total of $8,700.96 in costs. *See infra* n. 15.

G. Additional Fees for Litigating the Motion

In the Reply, Plaintiff seeks additional attorneys' fees for litigating this Motion. The Tenth Circuit has held that when an attorney substantially prevails in a contested motion for attorney's fees, he is entitled to be compensated for the time litigating the fee award. *Love v. Mayor, City of Cheyenne, Wyo*, 620 F.2d 235, 237 (10th Cir. 1980). The total additional fees requested are reasonable and will be awarded by the Court at the hourly rate of $375.00 for Messrs. Rosenstock and Yohalem and at $175.00 per hour for Ms. Murray. Mr. Rosenstock requested additional compensation for 18.63 hours for the

Motion. Mr. Yohalem requested additional compensation for 23.46 hours, and Ms.

Murray requested additional compensation for 10.58 hours.[11]

IT IS ORDERED that the PLAINTIFF'S CORRECTED MOTION FOR

ATTORNEYS' FEES AND COSTS AND MEMORANDUM IN SUPPORT (Doc. No.

105) is granted as follows:

| | | |
|---|---|---|
| 1. Mr. Rosenstock's fees | $167,920.52[12] | |
| 2. Mr. Yohalem's fees | $77,120.11[13] | |
| 3. Ms. Murray's fees | $15,146.25[14] | |
| 4. Costs | $ 8,610.96[15] | |
| TOTAL AWARD | $268,797.84 | |

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[11] Plaintiff did not decrease the request by 8% for inadvertent duplication related to the Motion and neither will the Court.

[12] The award for Mr. Rosenstock is 395.27 hours for the case plus 18.63 hours for the Motion multiplied by $375.00 per hour equals $155,212.50 in total fees plus gross receipts tax of $12,708.02 for a total of $167,920.52.

[13] The award for Mr. Yohalem is 166.63 hours for the case plus 23.46 hours for the Motion multiplied by $375.00 per hour equals $71,283.75 in total fees plus gross receipts tax of $5,836.36 for a total of $77,120.11.

[14] The award for Ms. Murray is 69.42 hours for the case plus 10.58 for the Motion multiplied by $175.00 per hour equals $14,000 in total fees plus gross receipts tax of $1,146.25 for a total of $15,146.25.

[15] Plaintiff requested costs of $9,102.06 and the Court will subtract $496.10 and will add $5.00 for a total of $8,610.96 in costs.